## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Daniel Cronin, being duly sworn, depose and state as follows:

## AGENT BACKGROUND

1. I have been employed as a police officer by the Town of North Andover, Massachusetts, for approximately 35 years. For approximately 30 years, I have been a Detective in the Criminal Investigation Division. For approximately ten years, I have been a Task Force Officer ("TFO") assigned to the Federal Bureau of Investigation ("FBI") Lowell Resident Agency.

2. I have participated in hundreds of narcotic investigations and have been involved in the arrest and prosecution of hundreds of people for various narcotic offenses. I have received advanced specialized training in the following areas: Drug Enforcement Administration Narcotics Investigations, specialized training in the application and execution of search warrants at the Massachusetts State Police Academy, and crime-scene investigation and preservation. I have also received specialized training related to criminal activity over the Internet, sponsored by the Northeastern Massachusetts Law Enforcement Council Computer Crime Unit and Chelmsford, Massachusetts Police Department. I have testified in Massachusetts state criminal courts more than 300 times.

3. As an FBI TFO, I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code. As an FBI TFO, I have received specialized training regarding, and learned through experience about, the activities of drug traffickers, including the methods used to package, store, and distribute drugs, and the methods used by drug traffickers to conceal and launder the proceeds of their illegal drug trafficking activities.

4. Based on my training and experience, I am familiar with the manner and means commonly employed by drug traffickers, including those employed to avoid detection by law enforcement. I am also familiar with terminology and slang commonly employed by drug traffickers. In my training and experience, I have observed and examined cocaine, cocaine base (commonly referred to as "crack" or "crack cocaine"), heroin, fentanyl, methamphetamine, oxycodone, and other controlled substances. I am also familiar with the prices commonly charged on the street for these substances, the method of packaging, and the street terms used in their trade.

5. I have participated in various aspects of drug-related investigations. I have participated in controlled purchases of illegal narcotics using cooperating witnesses and undercover law enforcement agents and officers. I have prepared and submitted affidavits in support of applications for criminal complaints, search warrants, tracking warrants, and arrest warrants. I have also conducted and coordinated electronic and physical surveillance of individuals involved in the illegal distribution of controlled substances.

6. Based on my training and experience, I am aware that drug traffickers commonly use cellular telephones to communicate about and further their drug trafficking activities, but are aware of law enforcement's use of electronic surveillance, and thus frequently change cellular telephone numbers and cellular telephones, use multiple cellular telephones simultaneously, use prepaid cellular telephones (where the subscriber of the phone is not required to provide personal identifying information), and use encrypted messaging applications to thwart law enforcement's use of electronic surveillance. I am also aware that drug traffickers often speak in vague, guarded, or coded language when discussing their illegal business to prevent detection and often use text messages in lieu of phone calls to avoid speaking over the telephone.

## PURPOSE OF THE AFFIDAVIT

7.  I submit this affidavit in support of an application for a criminal complaint charging that, on or about October 9, 2025, Nelson RIVERA, a/k/a, "PEE-WEE," distributed and possessed with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(vi).

## PROBABLE CAUSE

8.  On October 8, 2025, at the direction of agents, a cooperating witness (hereinafter "CW-1") asked if RIVERA could provide CW-1 with 50 grams of fentanyl.[1]  RIVERA agreed to provide CW-1 with 50 grams of fentanyl for $750.  This communication was conducted via a Facetime call that was not recorded or in the presence of agents.  The two agreed to meet at an apartment complex in Haverhill for the deal the following day.

9.  On October 9, 2025, CW-1 made a controlled purchase of 49 grams of fentanyl from Nelson RIVERA, a/k/a "PEE-WEE."  RIVERA agreed to meet CW-1 at the apartment complex in Haverhill for the deal.  Agents searched CW-1 for contraband and money with negative results. Agents equipped CW-1 with audio/video recording and surveillance devices so that they could record and monitor the deal live.  Agents were able to live-monitor the audio and video feeds from the devices.  Agents provided CW-1 with $750 in official government funds ("OGF") to make the buy and surveilled CW-1 to the apartment complex in Haverhill.

10.  Agents saw CW-1 arrive at the parking lot of the apartment complex.  Agents saw RIVERA arrive in a white Acura, bearing New Hampshire registration 4906033 (the "white

---

[1] CW-1 has a criminal history including convictions for assault and battery, resisting arrest, and destruction of property.  CW-1 was cooperating with the FBI in exchange for payment and potential relocation for safety in connection with this and other investigations.  CW-1 was recently arrested on state charges related to a shooting in which no one was hit.  The FBI subsequently closed CW-1.

Acura"), registered to Vilma Lee Torres, whom agents know is RIVERA's mother, and meet with CW-1. Agents who are familiar with RIVERA from prior investigations and from reviewing photographs of RIVERA, identified RIVERA exit the front passenger seat of the white Acura and then identified RIVERA on the audio and video surveillance recordings during the deal. On the audio/video recording and physical surveillance, agents saw CW-1 and RIVERA enter the apartment complex together. On the audio/video recording, I could hear CW-1 ask RIVERA if he had everything with him, including "The cut?" RIVERA replied, "Yeah." During the deal, RIVERA stated, "You didn't see me, you don't know me, and I am doing this as a favor. I am out on bail." RIVERA told CW-1, "This shit is dangerous, it will kill you." RIVERA told CW-1, "Make sure you clean up this area, not trying to tell you what to do, you got kids, you feel me? This shit will kill 'em faster than us."

11.     On the audio/video recording, I can see CW-1 and RIVERA enter an apartment and see CW-1 hand cash to RIVERA and see RIVERA count the money. I can then see RIVERA blend a tan, powdery substance in an electric blender. As discussed below, this was later confirmed as fentanyl. During the deal, I can hear on the recording RIVERA tell CW-1 that RIVERA is out on bail. I know that RIVERA posted bail in a pending indictment in Middlesex Superior Court for trafficking over 200 grams of cocaine.

12.     Still images from inside the apartment from the audio/video recording of CW-1's controlled buy of fentanyl from RIVERA are depicted below.



*RIVERA counting the OGF provided by CW-1 for the fentanyl*



*RIVERA mixing fentanyl with a cutting agent*



*RIVERA using his phone during the controlled buy*

13.     Agents saw RIVERA leave the apartment complex and get into the white Acura and leave the area.  Agents then saw CW-1 leave the apartment complex and surveilled CW-1 to a predetermined meeting location where they took possession of the fentanyl CW-1 bought from RIVERA, as well as the audio/video recording and monitoring devices.  The fentanyl was in a plastic bag, which was inside a black latex glove.  Agents searched CW-1 for money and contraband with negative results and debriefed CW-1 about the deal.  The fentanyl was transported to the DEA Northeast Regional Laboratory where it was analyzed and confirmed to be 49.740 grams of a substance containing fentanyl.

## CONCLUSION

14.     Based on the information described above, I have probable cause to believe that that, on or about October 9, 2025, in Haverhill, Massachusetts, NELSON RIVERA, a/k/a "PEE-WEE," distributed and possessed with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(vi).

Respectfully submitted,

_____
Daniel Cronin
Task Force Officer
Federal Bureau of Investigation

Attested and sworn to by telephone in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 on February 9, 2026.

_____
Hon. Donald L. Cabell
Chief United States Magistrate Judge